IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | | |
|---|---|---|
| NET –LINX AMERICAS, INC. | )( | |
| Plaintiff | )( | |
| | )( | CASE NO. 1:13-cv-03394-WJW |
| V | )( | |
| | )( | |
| THE BERRY COMPANY, LLC | )( | |
| Defendant | )( | |

## **SECOND AMENDED COMPLAINT**

### **PARTIES**

1.  Plaintiff net-linx Americas, Inc. („net-linx") is a corporation organized and existing under the laws of Canada with its principal place of business located in Edmonton, Canada.

2.  Defendant Berry Company, LLC („Berry") is a limited liability company („LLC") and resident of Colorado, with its principal place of business located in Englewood, Colorado. Defendant may be served through its Colorado registered agent by serving Corporation Services Company, 1560 Broadway, Suite 2090, Denver Colorado, 80202. The sole member of Defendant Berry LLC is TBC Holdings II, Inc., a Delaware Corporation, a domestic corporation residing in Delaware, whose registered agent is Corporation Service Company, 2711 Centerville Rd, Ste. 400, Wilmington, Delaware 19808.

### **JURISDICTION**

1

3.   The court has jurisdiction over the lawsuit under 28 U.S.C. § 1332 (a)(2) because the suit is between a citizen of a U.S. state and a citizen of Canada, and the amount in controversy exceeds $ 75,000.00,  excluding interest and costs.

## VENUE

4.   Venue is proper in this district under 28 U.S.C § 1391 (b)(1) because defendant resides in this district  with its corporate managing headquarters at 160 Inverness Drive, West Englewood, Colorado 80112.  The contract clause  choosing Delaware as place of venue should no longer be controlling as at the time the contract was executed  the contract partner  was Local Insight Media.  Through  the bankruptcy of the corporation, Berry emerged  from the merged companies of Local Insight Media, Alltel and Windstream, as the owner of the corporate assets and liabilities remaining, and opened its office in Colorado.  The claims asserted herein arise after the bankruptcy discharge of the above referenced companies..

## NATURE OF THE CASE

5.   Plaintiff is a software company that developed a sophisticated software for publishing telephone directories.

6.   Defendant  is a major publisher whose business includes the  publishing of telephone directories.

7.   On November 8, 2001, plaintiff and Alltel Publishing Corporation executed a written Software License and Service Agreement („Agreement") in which plaintiff sold defendant software  for the publishing of telephone directories.

8. Through various mergers and a bankruptcy, defendant Berry eventually assumed all liabilities and obligations of the software license agreement.

9. Plaintiff is filing this claim against defendant for violating the territorial restriction in the licensing agreement, which restricted the use of the software, for use only in the United States.

## PRIMARY CONTRACT PROVISIONS

10. The Agreement included the following obligations, relevant to this cause:

    **Section 3: Software License:**

    3.1  The licences are perpetual unless terminated in accordance with this agreement.

    3.2  As between the parties, net-linx is and shall remain the sole owner of (a) the Software; (b) any software produced as a result of performance of the Services by net-linx alone or with its designees (...)

11. **Section 10: General Provisions**

    10.6  Either party may terminate this Agreement, in addition to any other rights and remedies it may have in law or equity, (i) if the other party commits a breach of this Agreement and fails to cure such breach within thirty (30) days after reciept of notice from the nonbreaching party of such breach or (ii) if the other party becomes insolvent or files for bankruptcy (either voluntary or involuntary)."

12. **Schedule A of the Software License and Service Agreement**

    1. „Software" means the following described base programs(...):

    (a)    nxDSMP with nxPageSmart

    (b)    nxEdge

3

  (c)  nxWisdom

  (d)  nxVoyageur

2. (g) (...) Total License Fees after discount, due under this Agreement $ 3,020,900.00

13. **Use of the Software is subject to the following License Limitations:**

 3. License Limitation

 (a) The Configured Versions and their related Documentation may be used by the Purchaser within the United States of America („Specified Territory") for the purpose of producing directories containing only Specified Territory Data (defined below), (...).

 „Specified Territory Data" means listings or advertisement of people, businesses, government departments, services or product located in the Specified Territory or directed specifically to the Specified Territory market.

 (b) Purchaser may Install (as defined below) and Use (as defined below) the Configured Version of each Base Program on a single server and on that number of Workstation Computers as the number of per Seat Licenses purchased by the Purchaser with respect to such Base Program. Install means copy the Software to a hard disc drive or similar storage device. Use consists of loading the software into computer memory or running it on a central processing unit. A Workstation Computer means a single computer owned or controlled by Purchaser or its Affiliates and located in the Specified Territory.

**FACTUAL ALLEGATIONS REGARDING BREACH**

14. Through an Email December 2, 2011, written by Catherine Barnes, Senior Paralegal of Berry, it came to the attention of plaintiff that the Software was being used in the Dominican Republic by defendant in violation of the territorial restriction, as described in paragraph 3 (a) above. The email stated as follows:

> „(...) *The DSMP licenses are used by Berry personnel in a variety of locations icluding Erie, PA; Dayton and Hudson, OH; Englewood, CO; Lexinton, KY; Lincoln, NE; Charlotte, NC; St. Louis, WA* **and the Dominican Republic.(...)**"

15. Defendant confirmed in further discussions that employees in the Dominican Republic accessed the software, running on a central processing unit in Dayton, Ohio.

16. In the letter of January 6, 2012 defendant stated:

> „*Berry has had an outsourced production facility in the Dominican Republic. Each user computer uses a standard Internet Explorer browser to access the net-linx software by way of Citrix.*"

17. Said acts constitute „Use" of the software in violation of the licensing agreement territorial restriction clause.

18. „Use" as defined in the License Agreement must be caused or activated on a workstation.

19. A workstation consists of a central processing unit (CPU), memory, motherboard („passiv" part in regards to using the Workstation) AND I/O devices such as sreen/monitor, keybord and mouse, which provide/form a local unit („active" part in regards to using the Workstation).

20. Usually an employee (user) sits in front of this local unit and interacts with the Workstation using I/O devices. The term „Use" means use by a person/employee of the Defendant, who causes the loading or running (as described in the license Agreement) through I/O devices.

21. The whole process of „use", the „active" as well as the „passive" part, must take place in the Specified Territory. The separation of CPU and I/O devices is a breach of contract.

22. With the employees in the Dominican Republic, a local separation of the Workstation and I/O devices took place.

23. The I/O devices, employees and users were „outsourced" and were therefore operating with no licensing Agreement.

24. As described above such was clearly a breach of Section 3 of Schedule A of the Software License and Service Agreement.

### FACTUAL ALLEGATIONS REGARDING MATERIAL BREACH

25. Defendant was also aware that having employees in the Dominican Republic was a breach of the contract.

26. In 2006, Plaintiff attempted to sale a license to LIM, a predecessor of Berry, for the publishing business in the Dominican Republic. This offer was rejected.

27. Thereafter, LIM hired employees in the Dominican Republic to use 18 terminals set up there to access the main Server in the USA.

28. The facts as stated above clearly indicate that the agreement was breached by defendant, that it had knowledge of the breach and that said acts were not done in good faith.

29. Accordingly, the breach is material.

30. This is also supported by the fact that in November of 2008, David D. Miller, representing LIM, attempted to negotiate an agreement with the plaintiff in his desire to use the plaintiff´s software in India, in the manner as was done in the Dominican Republic.

31. Paragraph 2 of the India agreement of the suggested language in the Amendment to software license agreement by David Miller, was an offer to purchase licenses to provide the defendant through its third-party service provider, access to and use of the nxAdsmart and nxICE modules of the Software as well as the nxDSMP module, to the extent reasonably necessary to enable access and use of the software.

32. As stated above, in the suggested changes LIM made (on or about November 19, 2008), it is stated in Section 3(a) that „Not withstanding nxDSMP may be used in the Republic of India to the extent reasonably necessary to enable access to the nxDSMP installation in North-America."

33. Clearly it was the mind set of LIM that an amended contract was required to operate outside the territory restricted to in the original contract, to access the Software installed in the United States, in the same manner as was done in the Dominican Republic, without a license.

## TERMINATION OF CONTRACT

34. As a result of the Email of December 2, 2011, written by Catherine Barnes, Senior Paralegal of defendant Berry, on December 23, 2011 Plaintiff wrote a letter of Notification of Breach of Agreement and Termination to the following persons:

    Mr. John Fischer, General Counsel of Local Insight Media and
    President of Defendant.

    Mr. Scott Pomeroy, President of Local Insight Media

    Mr. W. Aaron Bowlds, General Counsel of the Defendant.

35. As defendant failed to cure the breach complained of within the 30 days, net-linx terminated the Software License and Service Agreement effectively on January 24, 2012. Plaintiff Net- linx made demand on defendant Berry to stop using the software on or before January 31, 2012.

36. Nevertheless, defendant continued to use the software after the contract was terminated.

37. On January 31, 2012 plaintiff, in an attempt to settle the matter, offered to cancel the Termination, release defendant Berry from all claims, accept further future usage of the Software within the Berry Company, grant exeptions to the Specified Territory for up to 20 users in the Dominican Republic, against one-time compensation payment of US $ 480,000.00 to be received on/or before February 10, 2012.

38. Defendant refused this offer and the Termination remained in effect.

39. Again on February 5, 2012 plaintiff repeated its demand to insure that defendant cease usage of the Software, based on the termination of the Software License and Service Agreement of January 24, 2012.

40. Again no reasonable offer or counter was made by defendant and the termination remained in effect.

41. In total, defendant used 184 seats after the termination.

42. This was confirmed by an Email dated January 16, 2012 by Aaron Bowlds, General Counsel and Secretary of Berry.

43. Plaintiff has always performed its obligations under the contract

## BREACH OF CONTRACT IS MATERIAL

44. The facts as stated above clearly indicate that the agreement was breached by defendant, that it had knowledge of the breach, that said acts were not done in good faith.

45. Accordingly, the breach is material.

## DAMAGES

46. As a direct and proximate result of defendant´s breach, plaintiff suffered the following damages:

a). Fees for use of the 184 seats in the United States after termination calculated on the price stated in the contract in the amount of $1,840,000.00.

b). Fees for the cost of a second software license for use in the Dominican Republic of US $ 790,000.00.

## PRAYER FOR RELIEF

47. WHEREFORE, Plaintiff net-linx respectfully asks for judgement against defendant Berry for damages as alleged herein above in the amount of $2,630,000.00, plus costs, pre-judgment and post-judgment interest, and any other damages as allowed by law.

Respectfully submitted this 12th day of January, 2014.

s/ Bernard Buecker
Bernard Buecker
Law Office of Bernard Buecker
1220 Tower Life Bldg.
310 S St Marys
San Antonio, Texas 78205
Tel. 210 226 1788

9

Fax. 210 858 9307
Colorado Bar No.  8632
Email: mastholte@aol.com
Attorney for Plaintiff